COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                        NO.
2-08-196-CV

 

 

STEPHEN C. WALTERS, D.D.S.;                                           APPELLANTS

ARLINGTON ORAL
SURGERY, P.A.;

AND
PARTY DOING BUSINESS AS

ARLINGTON ORAL
SURGERY

 

                                                   V.

 

TRINA HUDOBA, INDIVIDUALLY                                               APPELLEE

AND
ON BEHALF OF THE ESTATE

OF
ELIZABETH TAYLOR, DECEASED

 

                                              ------------

 

           FROM
THE 153RD DISTRICT
 COURT OF
 TARRANT
 COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction








Stephen C. Walters, D.D.S.,
and Arlington Oral Surgery, Appellants, (collectively referred to herein as Dr.
Walters) appeal the trial court=s denial of their motion to dismiss Appellee Trina Hudoba=s dental malpractice claim for the alleged failure to file an adequate
expert report.  Because Appellee timely
filed an adequate expert report, the trial court did not abuse its discretion
by refusing to dismiss the suit. 
Accordingly, we will affirm the trial court=s order.

II.  Factual and Procedural Background

Appellee=s daughter, Elizabeth Taylor, sought treatment from Dr. Walters for a
tooth extraction.  Taylor was five-foot-three-inches tall and
weighed 290 pounds; she suffered from a heart murmer, high blood pressure,
chest pain, irregular heart beat, bronchitis, asthma, and sleep apnea.  Prior to performing the tooth extraction
procedure, Dr. Walters administered general anesthesia to Taylor. 
Following the administration of the anesthesia drugs, Taylor stopped breathing.  Resuscitation efforts commenced; Dr. Walters
intubated TaylorCplacing the tube into Taylor=s stomach instead of her lungsCand a call to 911 was placed. 
Paramedics arrived and transported Taylor
to the hospital where she was pronounced dead on arrival.








The State Board of Dental
Examiners (the Board) initiated an investigation into Taylor=s death.  Roger P. Byrne, D.D.S,
M.D. examined the Board=s
investigative file and prepared an expert report for the Board.  The report is eighteen pages long and details
the records Dr. Byrne reviewed, the statements Dr. Byrne reviewed, the sequence
of events that occurred, the Arecord keeping@ standard of
care violations by Dr. Walters, and the nine Astandard of care violations committed by Dr. Walters which led to Ms.
Taylor=s death.@  It contains a report summary concluding that A[i]t is my opinion Dr. Walters=[s] negligent acts are responsible for the demise of Ms. Elizabeth
Taylor.@  A copy of Dr. Byrne=s report is attached to this opinion as Appendix A.

Appellee attached Dr. Byrne=s report to her October 30, 2007 original petition to satisfy the
statutory expert report requirement.  See
Tex. Civ.
Prac. & Rem. Code Ann. ' 74.351 (Vernon
Supp. 2008).  Appellants timely filed an
answer that, in two paragraphs, objected to Dr. Byrne=s expert report.  Specifically,
Appellants alleged that

8.  Defendants object to the
correspondence/report and curriculum vitae of Roger P. Byrne, D.D.S., M.D., as
attached to Plaintiff=s
Original Petition.  Dr. Byrne=s
correspondence, with attached curriculum vitae, is confidential communication
to the State Board of Dental Examiners, and therefore, should not be attached
to Plaintiff=s
Original Petition.  Defendants further
object to any attempt by Plaintiff [sic] utilize Dr. Byrne=s
correspondence to comply with the expert report requirements of Chapter 74 of
the Texas Civil Practice & Remedies Code.

 

9.  To the extent that Plaintiff is attempting to
utilize the correspondence and curriculum vitae of Roger P. Byrne, D.D.S., M.D.
to comply with the expert report requirements of Chapter 74 of the Texas Civil
Practice & Remedies Code, Defendants object to the opinions and
qualifications of Dr. Byrne in accordance with Chapter 74 of the Texas Civil
Practice & Remedies Code. 
Additionally, Defendants object to the sufficiency of the report/correspondence
and curriculum vitae of Dr. Byrne in accordance with Chapter 74 of the Texas
Civil Practice & Remedies Code. 

 

 








The record reflects that
Appellee requested a hearing on Dr. Walters=s objections, set forth above. 
Dr. Walters filed AObjections
to Hearing on Chapter 74 Objections,@ claiming that AChapter 74
does not permit the Court to rule on Defendants= objections to Plaintiff=s expert report prior to the 120-day deadline@ and requesting that Athe hearing on Defendants= objections to Plaintiff=s expert report be reset until after the 120-day deadline.@  The trial court conducted a
hearing on January 14, 2008, within 120 days of Appellee=s October 30, 2007 filing of her original petition.  The trial court signed a February 5, 2008
order overruling Dr. Walters=s objection to conducting the hearing prior to the 120-day deadline
and also overruling Dr. Walters=s objections to the expert report of Dr. Byrne. 

On March 14, 2008, Dr.
Walters filed a motion to dismiss Appellee=s claim for Afailure to
comply with Chapter 74 expert report requirement.@  Dr. Walters specifically
alleged that Dr. Byrne was not qualified and that his report Afails to establish the causal relationship between defendants= alleged negligence and Elizabeth Taylor=s death.@  Appellee filed objections and a response to
Dr. Walters=s motion to
dismiss.  Appellee contended that Aa hearing was already held on all of Defendants= objections to Plaintiff=s expert report under Chapter 74 and all of Defendants= objections were overruled.@ 

The trial court conducted a
hearing on Dr. Walters=s motion to
dismiss on April 8, 2008.  The trial
court signed an April 21, 2008 order overruling Appellee=s objection to the motion to dismiss contending that all objections to
Dr. Byrne=s report had
been overruled by the trial court=s prior order.  The trial court
also denied Dr. Walters=s motion to
dismiss.  Dr. Walters perfected this
appeal.

III.
Dr. Walters=s Appellate Contentions








In his sole issue, Dr.
Walters contends that the trial court abused its discretion by denying his
motion to dismiss.  Dr. Walters argues on
appeal that Dr. Byrne=s report Afails to establish the causal relationship between Dr. Walters=[s] alleged negligence and Ms. Taylor=s death.@  Specifically, Dr. Walters claims that Dr.
Byrne=s report (1) addresses Dr. Walters=s alleged violation of the State Board=s rules, but it Adoes not
establish the causal relationship between Dr. Walters=[s] purported negligence and Elizabeth Taylor=s death;@ (2)@is conclusory because he fails to rule out other possible causes of
Ms. Taylor=s death;@ (3) Afails to
explain how Dr. Walters=[s] failure
to appropriately treat Ms. Taylor=s respiratory depression caused her death;@ (4) Aomits any
explanation for how Dr. Walters=[s] administration of general anesthesia proximately caused Ms. Taylor=s death;@ (5) Acontains a large analytical gap[] in that he failed to explain how Dr.
Walters=[s] administration of Versed, Fentanyl, and Propofal proximately
caused Ms. Taylor=s death;@ and (6) Afails to
flesh out how Dr. Walters=[s]
administration of general anesthesia and failure to respond to Ms. Taylor=s respiratory depression caused Ms. Taylor=s death.@ 

On appeal, Dr. Walters does
not raise any challenge to Dr. Byrne=s qualifications, but on page 8 of his brief he complains:








Dr. Byrne was retained by the Texas State Board
of Dental Examiners (AState
Board@) to
serve as an expert witness in the State Board=s
case involving Dr. Walters=[s] treatment of Ms.
Taylor.  Dr. Byrne wrote his report as an
expert witness for the State Board. . . . Dr. Byrne=s
opinions are relevant to the State Board=s investigation of Dr.
Walters=[s]
treatment of Ms. Taylor,   . . . but Dr.
Byrne=s
opinions are irrelevant in this malpractice case. . . . While Dr. Byrne=s
report addresses Dr. Walters=[s] alleged violation of the
State Board=s
Rules, it does not establish the causal relationship between Dr. Walters=[s]
purported negligence and Elizabeth Taylor=s death.@

  

Thus, Dr. Walters=s two main appellate complaints concerning Dr. Byrne=s report concern causation and Appellee=s reliance on a report prepared for the Board. 

IV.  Waiver of Causation Objection

Appellee claims that Dr.
Walters waived all of his causation objections because he did not timely assert
them in the trial court.  Texas Civil
Practice and Remedies Code, section 74.351(a) provides:

In a
health care liability claim, a claimant shall, not later than the 120th day
after the date the original petition was filed, serve on each party or the
party=s
attorney one or more expert reports, with a curriculum vitae of each expert
listed in the report for each physician or health care provider against whom a
liability claim is asserted. . . . Each defendant physician or health care
provider whose conduct is implicated in a report must file and serve any
objection to the sufficiency of the report not later than the 21st day after
the date it was served, failing which all objections are waived.

 








Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(a) (emphasis added); see also Maris v. Hendricks, 262
S.W.3d 379, 385 (Tex. App.CFort Worth 2008, pet. denied) (holding objection to sufficiency of
chapter 74 expert report was waived because it was not asserted within the
statutory twenty-one-day time period).      Dr.
Walters concedes that he was required to object to Dr. Byrne=s report within the statutory twenty-one-day time period; Dr. Walters
explained at oral argument that the objection asserted in his answer that ADefendants object to the sufficiency of the report/correspondence and
curriculum vitae of Dr. Byrne in accordance with Chapter 74 of the Texas Civil
Practice & Remedies Code@ impliedly included an objection to every statutory element of an
expert report.  Thus, Dr. Walters claims
that he did timely assert his causation objection.








We cannot agree.  Dr. Walters=s only timely filed objections to Dr. Byrne=s report were contained in paragraphs 8 and 9 of his original answer,
set forth previously in this opinion. 
Dr. Walters objected to Appellee=s use of a report prepared for the Board and to the Aopinions and qualifications of Dr. Byrne@ and Athe
sufficiency of the report.@  Neither of these objections
raise the objections to the causation element of Dr. Byrne=s report set forth in his motion to dismiss or in his brief on
appeal.  See Tex. R. App. P.
33.1(a) (requiring objection to be specific); Plemons v. Harris, No.
02-08-00326-CV, 2009 WL 51290, *3 (Tex. App.CFort Worth Jan. 8, 2009, no pet. h.) (holding objection to expert
report made in trial court must comport with complaint asserted on appeal).  Because Dr. Walters did not timely assert
specific causation objections, he waived those objections.  See Ogletree v. Matthews, 262 S.W.3d
316, 322 (Tex. 2007) (stating that any objection to report must be made within
twenty-one days after service of  report); Williams v. Mora, 264 S.W.3d
888, 891(Tex. App.CWaco 2008,
no pet.) (holding that when defendant=s only timely filed objections to expert report were that two
statements were speculative, defendant waived all other objections); Springer
v. Johnson, No. 07-07-00424-CV, 2008 WL 2346385, at *9 (Tex. App.CAmarillo June 4, 2008,  no pet.)
(holding objection to report not raised in trial court was waived).  Because the causation objections asserted in
Dr. Walters=s motion to
dismiss and in this appeal were not filed within twenty-one days of the service
of Dr. Byrne=s report, we
hold they were waived and overrule the portion of Dr. Walters=s issue arguing that Dr. Byrne=s report is inadequate on the issue of causation.  See Tex. Civ. Prac. & Rem. Code
Ann. ' 74.351(a).   

V.  Dr. Walters=s Objection Concerning Use of

Report Prepared for the Board

 

In the second portion of his
sole issue, Dr. Walters argues that he did, however, timely object to Appellee=s use of Dr. Byrne=s report because the report was prepared for the Texas State Board of
Dental Examiners.  As set forth above, at
page eight of his brief Dr. Walters attempts to bootstrap, or tie, his
causation arguments to his preserved contention that the trial court abused its
discretion by concluding that a report prepared for the State Board was an
adequate report.  We have held that Dr.
Walters waived his causation objections; but in the interest of justice,
alternatively, and because this causation argument is bootstrapped to an
objection that Dr. Walters did timely make, we address Dr. Walters=s causation arguments below.

A.  Standard of Review








We review a trial court=s denial of a motion to dismiss for an abuse of discretion.  Ctr. for Neurological Disorders, P.A. v.
George, 261 S.W.3d 285, 290B91 (Tex. App.CFort Worth
2008, no pet.); Maris, 262 S.W.3d at 383.  To determine whether a trial court abused its
discretion, we must decide whether the trial court acted without reference to
any guiding rules or principles; in other words, we must decide whether the act
was arbitrary or unreasonable.  Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241B42 (Tex. 1985), cert. denied, 476 U.S. 1159 (1986).  Merely because a trial court may decide a
matter within its discretion in a different manner than an appellate court
would in a similar circumstance does not demonstrate that an abuse of
discretion has occurred.  Id.  But a trial court has no discretion in
determining what the law is or in applying the law to the facts, and thus Aa clear failure by the trial court to analyze or apply the law
correctly will constitute an abuse of discretion.@  Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992); Ehrlich v. Miles, 144 S.W.3d
620, 624 (Tex. App.CFort Worth
2004, pet. denied).

B.  No Abuse of Discretion








A trial court must grant the
motion to dismiss if it finds, after a hearing, that Athe report does not represent an objective good faith effort to comply
with the definition of an expert report@ in the statute.  Tex. Civ.
Prac. & Rem. Code Ann. ' 74.351(l).  While
the expert report Aneed not
marshal all the plaintiff=s proof,@ Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 878 (Tex. 2001) (construing former art. 4590i, ' 13.01),  it must provide a
fair summary of the expert=s opinions as to the Aapplicable standards of care, the manner in which the care rendered by
the physician or health care provider failed to meet the standards, and the
causal relationship between that failure and the injury, harm, or damages
claimed.@  Tex. Civ. Prac. & Rem.
Code Ann. ' 74.351(r)(6).

To constitute a good-faith
effort, the report must Adiscuss the
standard of care, breach, and causation with sufficient specificity to inform
the defendant of the conduct the plaintiff has called into question and to
provide a basis for the trial court to conclude that the claims have merit.@  Palacios, 46 S.W.3d at
875.  A report does not fulfill this
requirement if it merely states the expert=s conclusions or if it omits any of the statutory requirements.  Id. at 879.  But the information in the report Adoes not have to meet the same requirements as the evidence offered in
a summary‑judgment proceeding or at trial.@  Id.  The claimant=s expert must incorporate enough information to fulfill two purposes:
(1) inform the defendant of the specific conduct the plaintiff has called into
question; and (2) provide a basis for the trial court to conclude the claims
are meritorious.  Id.








When reviewing the adequacy
of a report, the only information relevant to the inquiry is the information
contained within the four corners of the document.  Id. at 878.  This requirement precludes a court from
filling gaps in a report by drawing inferences or guessing as to what the
expert likely meant or intended.  See
id.  However, section 74.351 does not
prohibit experts, as opposed to courts, from making inferences based on
medical history.  Marvin v. Fithian,
No. 14‑07‑00996‑CV, 2008 WL 2579824, at *4 (Tex. App.CHouston [14th Dist.] July 1, 2008, no pet.) (mem. op.); see also Tex. R. Evid. 703 (providing that an expert may draw inferences from the facts or
data in a particular case); Tex. R. Evid. 705 (providing that expert may
testify in terms of opinions and inferences).

To establish causation, an
expert report must provide information linking the defendant=s purported breach of the standard of care to the plaintiff=s injury.  See Hutchinson v.
Montemayor, 144 S.W.3d 614, 617 (Tex. App.CSan Antonio 2004, no pet.); see also Bowie Mem=l Hosp. v. Wright, 79 S.W.3d 48, 53 (Tex.
2002).  An expert must also explain the
basis of his statements to link his conclusions to the facts.  Wright, 79 S.W.3d at 52.

A review of Dr. Byrne=s report refutes each of Dr. Walters=s claims concerning its causation sufficiency.  Dr. Byrne=s report explains, 

It is my medical opinion,
based on the known sequence of events and reasonable medical probability, Ms.
Taylor=s death on 11/4/05 resulted from three separate, but obviously
connected, findings: 1) morbid obesity, reactive airway disease, Adifficult airway@, possibly
contributing obstructive sleep apnea, hypertension and cardiac hypertrophy; 2)
Dr. Walters[>s] decision
to perform an office-based operator-anesthetist general anesthesia on Ms.
Taylor; and 3) respiratory depression, resultant apnea and hypoxia from the
administration of Versed, Fentanyl, and Propofol medications with a progressive
spiral of decline into a life-threatening emergency which was not appropriately
treated by Dr. Walters. 








After setting forth Dr. Walters=s standard of care violations in classifying the pre-operative
physical risk status of Ms. Taylor, Dr. Byrne opined, AIt is my opinion Ms. Taylor should have had the tooth removed under a
local anesthesia or possibly a conscious sedation and local anesthesia because
of her significant general anesthesia medical risks.@  After setting forth Dr.
Walters=s standard of care violations in failing to consider the increased
risk of office-based general anesthesia in a morbidly obese patient, Dr. Byrne
opined, AIn my medical opinion, Dr. Walters had an inadequate fund of
knowledge, demonstrated poor clinical judgment, and possessed extremely low
skill levels in his ability to manage and maintain a difficult airway which
caused the death of Ms. Taylor.@  After setting forth Dr.
Walters=s standard of care violations in failing to train and rehearse his
office staff in emergency procedures, Dr. Byrne opined, AIn my opinion, the apparent lack of emergency training and performance
by Dr. Walters and his staff caused Ms. Taylor=s death.@  After setting forth Dr. Walters=s standard of care violations in failing to appropriately treat Ms.
Taylor=s respiratory emergency by failing to immediately administer reversal
agents, failing to establish an intubated airway, and failing to provide
adequate respiratory support, Dr. Byrne opined, AIt is my opinion, Dr. Walters had an inadequate fund of anesthesia
knowledge about respiratory depression and possessed extremely poor judgment
and skill levels in his ability to manage and maintain an adequate airway which
caused the death of Ms. Taylor.@  These examples do not
constitute a complete itemization of the causation opinions in Dr. Byrne=s report.  There are still more,
which we do not detail here.  Finally,
Dr. Byrne concluded, AIt is my
opinion that Dr. Walters=[s]
negligent acts are responsible for the demise of Ms. Elizabeth Taylor.@  








Viewing the information set
forth within the four corners of Dr. Byrne=s report, we hold that the trial court did not abuse its discretion by
determining Dr. Byrne=s report
provides a fair summary of his expert opinions as to the Aapplicable standards of care, the manner in which the care rendered by
the physician or health care provider failed to meet the standards, and the
causal relationship between that failure and the injury, harm, or damages
claimed.@  Tex. Civ. Prac. & Rem.
Code Ann. ' 74.351(r)(6);
Palacios, 46 S.W.3d at 878.  The
trial court did not abuse its discretion by determining that Dr. Byrne=s report constitutes an objective good faith effort to satisfy the two
purposes of  section 74.351.  See Tex. Civ. Prac. & Rem. Code
Ann. ' 74.351.  








The cases cited by Dr.
Walters for the contrary position are not applicable here.  See Clark v. HCA, Inc., 210 S.W.3d 1,
11 (Tex. App.CEl Paso
2005, no pet.) (holding expert report did not causally link alleged negligent
use of Lovenox to compartment syndrome alleged as injury from doctor=s negligence); Barko v. Genzel, 123 S.W.3d 457, 458B59 (Tex. App.CEastland
2003, no pet.) (holding expert report did not causally link plaintiff=s claims that doctor negligently failed to diagnose and treat back
injury to miscarriage alleged as injury from doctor=s negligence); Windsor v. Maxwell, 121 S.W.3d 42, 46B50 (Tex. App.CFort Worth
2003, pet. denied) (holding expert report did not causally link plaintiff=s pleaded facts to intimal injury to left vertebral artery alleged as
injury from doctor=s
negligence); Zavala v. Pinkerton, No. 03-05-00169-CV, 2007 WL 2010832,
at *2 (Tex. App.CAustin July
10, 2007, no pet.) (mem. op.) (holding expert report did not causally link
plaintiff=s claim of
negligent wisdom tooth extraction Ato the chronic facial pain, internal derangement of the right and left
temporomandibular joints and other harm@ alleged as injuries from dentist=s negligence); Meyers v. Golden Palms Ret. & Health Ctrs.,
Inc., No. 13-06-00289-CV, 2007 WL 1500819, at *3 (Tex. App.CCorpus Christi May 24, 2007, pet. denied) (mem. op.) (holding expert
report did not show causal link between plaintiff=s claim of nursing home employees= negligent performance of a transfer of plaintiff from wheel chair to
the broken femur alleged as injury from negligence).       








Here, unlike the expert
reports in Clark, Barko, Windsor, Zavala, and Meyers,
Dr. Byrne=s report
does causally link Dr. Walters=s standard of care violations to the injuryCdeathCalleged to
have occurred as a result of Dr. Walters=s negligence.  As set forth
above, and demonstrated in the report attached to this opinion as Appendix A,
Dr. Byrne=s report
itemizes and then discusses in detail nine specific standard-of-care violations
by Dr. Walters: failure to appropriately classify the pre-operative physical
risk status of Ms. Taylor; failure to consider the increased risks of
office-based general anesthesia in a morbidly obese patient; failure to properly
assess the status of Ms. Taylor=s asthmatic bronchitis prior to administering general anesthesia;
failure to train and rehearse his office staff in emergency procedures; failure
to monitor Ms. Taylor=s vital
signs while she was under general anesthesia; failure to properly treat Ms.
Taylor=s respiratory emergency by not immediately administering reversal
agents, not establishing an intubated airway, and not providing adequate
respiratory support; failure to maintain flumazinil (Romazicon) medication on
his Acrash cart;@ failure to
properly perform advanced cardiac life support on Ms. Taylor; and failure to
use prudent medical judgment by choosing to use general anesthesia on Ms.
Taylor for Athe simple
removal of a tooth.@  After each section of the report discussing
each of these nine standard of care violations, Dr. Byrne=s report links the standard of care violation specifically to the
facts of Ms. Taylor=s
death.  Dr. Byrne=s factually specific causation opinions are not conclusory.  See Arkoma Basin Exploration Co. v. FMF
Assocs. 1990-A, Ltd., 249 S.W.3d 380, 392 n.32 (Tex. 2008) (defining
conclusory as A[e]xpressing
a factual inference without stating the underlying facts on which the inference
is based@); see also, e.g., Mosley v. Mundine, 249 S.W.3d 775, 781 (Tex.
App.CDallas 2008, no pet.) (holding expert report sufficient on causation
element); Grindstaff v. Michie, 242 S.W.3d 536, 544 (Tex. App.CEl Paso 2007, no pet.) (same); Patel v. Williams, 237 S.W.3d
901, 906 (Tex. App.CHouston
[14th Dist.] 2007, no pet.) (same); Bidner v. Hill, 231 S.W.3d 471, 474
(Tex. App.CDallas 2007,
pet. denied) (same).  








Moreover, this is not a case
like Clark, Barko, Windsor, Zavala, or Meyers,
where the injury alleged by the plaintiff did not necessarily follow from the
negligence alleged by the plaintiff. 
Here the negligence alleged all relates to Dr. Walters=s administration of office-based general anesthesia to Ms.
Taylor.  The injury alleged, the death of
Ms. Taylor from respiratory depression induced by drugs administered by Dr.
Walters,  flowsCas opined by Dr. ByrneCdirectly from Dr. Walters=s negligent administration of those drugs in an office-based general
anesthesia and from Dr. Walters=s negligent care for Ms. Taylor during general anesthesia and after
she suffered respiratory distress.  An Aexpert report does not need to marshal all the evidence necessary to
establish causation at trial,@ it must only Acontain
sufficiently specific information to demonstrate causation beyond mere
conjecture.@  Farishta v. Tenet Healthsystem Hosps.
Dallas, Inc., 224 S.W.3d 448, 453 (Tex. App.CFort Worth 2007, no pet.) (citing Wright, 79 S.W.3d at
52).  Dr. Byrne=s report more than adequately meets this standard.








Concerning Dr. Walters=s contention that Dr. Byrne=s report is inadequate because it Afails to rule out other possible causes of Ms. Taylor=s death,@ no such
requirement exists, even at trial in a medical negligence case.  In a medical malpractice case, the plaintiff
must prove by competent testimony that the defendant=s negligence proximately caused the plaintiff=s injury.  Duff v. Yelin,
751 S.W.2d 175, 176 (Tex. 1988) (citing Hart v. Van Zandt, 399 S.W.2d
791, 792 (Tex. 1965) and Bowles v. Bourdon, 148 Tex. 1, 5, 219 S.W.2d
779, 782 (1949)).  The plaintiff must
establish a causal connection beyond the point of conjecture; proof of mere
possibilities will not support the submission of an issue to the jury.  Duff, 751 S.W.2d at 176.  The plaintiff is required to show evidence of
a Areasonable medical probability@ or Areasonable
probability@ that his or
her injuries were proximately caused by the negligence of one or more of the
defendants.  Park Place Hosp. v.
Estate of Milo, 909 S.W.2d 508, 511 (Tex. 1995).  But a plaintiff is not required to establish
causation in terms of medical certainty, nor is he or she required to exclude
every other reasonable hypothesis.  Bradley
v. Rogers, 879 S.W.2d 947, 954 (Tex. App.CHouston [14th Dist.] 1994, writ denied) (citing King v. Flamm,
442 S.W.2d 679, 682 (Tex. 1969)).  Dr. Walters
has cited no authority, and we have located none, indicating that an expert
report must Arule out
other possible causes of Ms. Taylor=s death@ in order to
be adequate under chapter 74.  Moreover,
Dr. Byrne=s report
specifically explains that Athe autopsy performed by the Tarrant [c]ounty Medical Examiner ruled
out a catastrophic cause of death such as a stroke or a myocardial infarction
and physical and microscopic findings were consistent with respiratory and
cardiac arrest.@

Concerning Dr. Walters=s contention that Dr. Byrne=s report is inadequate because it Afails to explain how Dr. Walters=[s] failure to appropriately treat Ms. Taylor=s respiratory depression caused her death,@ we simply cannot agree; Dr. Byrne=s report specifically explains that Dr. Walters failed to
appropriately treat Ms. Taylor=s respiratory depression by failing to administer reversal agents,
failing to establish an intubated airway, failing to provide adequate
respiratory support, failing to properly administer advanced cardiac life
support, and failing to train his staff in emergency procedures.  Dr. Byrne=s report specifically opines that each of these acts caused the death
of Ms. Taylor by preventing adequate ventilation of Ms. Taylor and allowing her
oxygen saturation to drop below an acceptable level. 








Concerning Dr. Walters=s contentions that Dr. Byrne=s report is inadequate because it Aomits any explanation for how Dr. Walters=[s] administration of general anesthesia proximately caused Ms. Taylor=s death,@ Acontains a large analytical gap in that he failed to explain how Dr.
Walters=[s] administration of Versed, Fentanyl, and Propofal proximately
caused Ms. Taylor=s death,@ and Afails to
flesh out how Dr. Walters=[s] administration
of general anesthesia and failure to respond to Ms. Taylor=s respiratory depression caused Ms. Taylor=s death,@ Dr. Byrne=s report speaks for itself.  As
explained above, Dr. Byrne=s report details exactly how Dr. Walters=s administration of general anesthesia caused Ms. Taylor=s death.  These contentions are
simply variations of the same challenges to Dr. Byrne=s report that we have rejected.

Concerning Dr. Walters=s contention that Appellee is somehow prohibited from using an expert
report paid for and prepared for the Texas State Board of Dental Examiners, we
have found no authority for this contention and Dr. Walters has cited
none.  And Dr. Byrne=s report expressly states,

While
there are similarities, it is my opinion that a case review for a licensing
board is different from that of a civil negligence case.  The licensing board is not only concerned
about causal negligent acts and damages to a patient as in a civil litigation,
I believe they are also concerned about other acts which demonstrate a
practitioner=s
fund of knowledge, medical judgment, clinical skill, trend of practice, and
attitude toward patient care in an effort to meet their charge to protect the
public.

 

Therefore, in my report I will also list all
standard of care violations I note in this case committed by Dr. Walters, be
they causal to damage or not . . . .

 








Thus, Dr. Byrne=s report does include a AStandard of Care ViolationsBSection 1,@ which
addresses Dr. Walters=s violations
of standards of care relevant to the State Board=s rules.  We did not utilize
these standard of care violations in our analysis of Dr. Byrne=s report.  And Dr. Byrne=s report contains a AStandard of Care ViolationsBSection 2@ in which
Dr. Byrne explains, AIn this
section I list and discuss the >standard of care= violations
committed by Dr. Walters which led to Ms. Taylor=s demise.@  These standard of care violations and their
corresponding specific factually based causation opinions form the basis of our
analysis of the adequacy of Dr. Byrne=s report.  Accordingly, although
Dr. Walters may be correct that the section 1 standard of care violations are
not applicable to a health care liability claim, the section 2 standard of care
violations clearly are.

We overrule the remainder of
Dr. Walters=s sole
issue.

VI.  Conclusion 

Having overruled Dr. Walters=s sole issue, we affirm the trial court=s order denying Dr. Walters=s motion to dismiss.

 

SUE WALKER

JUSTICE

 

PANEL:
GARDNER, WALKER, and MCCOY, JJ.

 

DELIVERED:
January 22, 2009








 

 

 

 

 

 

 

 

 

 

 

 

                                            APPENDIX
A

 

 

Note:
Due to the large size of the file, we have divided Appendix A into 2 parts.

 

208196CV_AppA.pdf contains:  Dr. Byrne=s one page letter to the Tarrant County Medical
Examiner dated February 17, 2006; Dr. Byrne=s letter to the State Board of Dental Examiners
dated February 13, 2006 and his report, comprising 18 pages.

[ http://www.2ndcoa.courts.state.tx.us/opdocs/208196CV_AppA.pdf
]

 

 

208196CV_Vitae.pdf contains Dr. Byrne=s 13 page Curriculum
Vitae.

[
http://www.2ndcoa.courts.state.tx.us/opdocs/208196CV_Vitae.pdf ]

 











[1]See Tex.
R. App. P. 47.4.